### 10767

#### FREDERICK *ET AL* v. CULLER

(109 S. E. 889)

1. PARTITION—IN PARTITION ANSWER DENYING COMPLAINT AND ALLEGING TITLE IN DEFENDANT PUTS PLAINTIFFS' TITLE IN ISSUE.—In action for partition, answer denying each and every allegation of the complaint not specifically admitted and alleging possession as owner in fee simple, and that plaintiffs have no right, title, or interest, puts in question the title of plaintiffs.·

2. SLAVES—EVIDENCE HELD SUFFICIENT TO PROVE COHABITATION OF SLAVES AS HUSBAND AND WIFE.—Evidence *held* sufficient to prove cohabitation of slaves as husband and wife.

3. MARRIAGE—CERTIFICATE OF MARRIAGE BY MINISTER NOT BOUND TO KEEP RECORD IS NOT ADMISSIBLE—If not bound to keep a record of marriage ceremonies, a minister's certificate is merely a statement of a private person, and not admissible in evidence.

4. MARRIAGE—IF CERTIFICATE OF MARRIAGE IS ADMITTED, IDENTITY OF PARTIES NAMED THEREIN MUST BE ESTABLISHED.—In proving a marriage, if the certificate of marriage is admitted, the identity of the parties named therein must be established.

5. SLAVES—COHABITATION OF MAN SLAVE AND WOMAN SLAVE BEFORE EMANCIPATION CONSTITUTED LAWFUL MARRIAGE.—Under the Enabling Act of December 21, 1865, and subsequent acts, the cohabitation of a man slave and a woman slave before emancipation and continuance of the relation at the time of the passage of the act constituted lawful marriage.

Before BOWMAN, J., Orangeburg, June, 1921.   Affirmed.

Action by Henrietta Frederick et al. against W. C. Culler. From judgment for defendant the plaintiffs appeal.

Following is the Master's report and the judgment based thereon:

This action is brought by the plaintiffs, claiming to be certain of the heirs at law of George Baxter, deceased, for

the partition of a tract of 30 acres of land situate in this county, of which it is alleged the said George Baxter died seized and possessed, the plaintiffs alleging also that the defendant, W. C. Culler, has purchased the interest of Bettie Baxter, the widow of the said George Baxter, in the said real estate and that the plaintiffs and the defendants are tenants in common as to the same.

The defendant makes answer denying each and every allegation of the complaint not specifically admitted in said answer, and alleges that he is in possession as the owner in fee simple of the premises described in the complaint, and that the plaintiffs have no right, title, or interest therein. The answer of the defendant therefore puts in question the title of the plaintiffs to any interest whatever in said real estate.

I have held reference in the action and taken such testimony as was submitted by the respective parties, and they have been as fully heard as they desired to be; and, from the testimony taken, the facts are as follows:

George Baxter, late of the County of Orangeburg, in said State, departed this life intestate about the year 1914, and it is not questioned that he was the owner in fee simple at the time of his death of the real estate described in the complaint in this action, which contains 30 acres, more or less, and situate in Goodland Township in said County and State. He left surviving him a widow, Bettie Baxter, and the plaintiffs contend that they are the lawful children and grand-children of the said intestate, and are therefore entitled to their shares in the property in question as heirs and distributees of his estate, and they make no question as to the share of the widow, Bettie Baxter, in the property, and claim that the defendant is a tenant in common with them as to the said property to the extent of the share of the said Bettie Baxter therein. The defendant, however, is in the possession of said real estate, claims to be the owner of the same in fee simple, and, as has been stated

above, he denies that the plaintiffs have any right, interest, or title in the property. In other words, he disputes the contention of the plaintiffs that they are the lawful children and grand-children of the said George Baxter, and thus makes a clear cut issue as to the facts upon which they based their claims of interest in the property in question.

The said George Baxter was born a negro slave and belonged to Jacob Stroman prior to the War between the States and up to the time of emancipation, and during all this time he lived on the plantation of said Stroman. There was also a woman slave on Stroman's place and belonging to him, called Dolly, and on the plantation of Gabriel Summers a woman slave named Bettie, who was the property of the said Summers. Bettie had four children, Henrietta, Aaron, Maxie, and Sam. The first three named are plaintiffs in this case. Sam died, leaving two children, Luther and George Baxter, who are also plaintiffs herein. Henrietta and Aaron were born during slavery, and Maxie and Sam after the war. George was the reputed father of all Bettie's children named above. He was also the father of Frank, a son of Dolly, born in 1854. Dolly also had children previous to the birth of Frank, the reputed father of same being Jerry Guignard. There is no evidence, however, that Dolly lived with Jerry at any time, and, although George had several children by Bettie, it does not appear that he made his home with her or lived with her regularly. On the other hand, the testimony is full and to my mind conclusive that George lived continuously in the same house with Dolly from the time of the birth of their son, Frank, until her death, which was shortly after 1900. On the old plantation of their master, Jacob Stroman, before and during the war and then after the war still on the same place until a home was given to them by the family of his old master, George and Dolly made their home together and also together moved to Orangeburg and resided there for several years.

It is understood that there was frequently no formal marriage ceremony among slaves, but the consent of the master to the cohabitation together of a man and woman slave was regarded sufficient to consider them as husband and wife.    It appears, however, that in the case at bar there was a formal ceremony of marriage of George and Dolly at Rocky Swamp Church some time before the birth of their son, Frank, which we have notice was in 1854, and there can be no doubt that during all the years that followed and down to the time of the death of Dolly they lived together as husband and wife, and that this relation was understood and recognized by all colored and white who knew them best.    The above facts in reference to George and Dolly negative very largely the testimony taken in the case with reference to the claim of the plaintiffs as to the relationship of George and Bettie.    That he had children by her is not denied, but the preponderating weight of the testimony is that they never cohabited together as husband and wife, and were not so regarded.    Bettie lived in slavery on the plantation of her master, Gabriel Summers, until freedom, and during the same period, as we have observed, George lived on the place of their master, Jacob Stroman, cohabiting there with Dolly, who was recognized as his wife, and their son, Frank, lived with them from his birth until some time after the war.    In this connection there is another circumstance which strikes me as suggestive.    Bettie was known as Bettie Jones when a slave, and for several years after the war, and some of the witnesses in the case allude to her by that name in the testimony.    When or how she got the surname Jones has not been explained. She had children by George Baxter during slavery and after the war, and, if she was a wife to George and so recognized, it is strange that she should have had the surname Jones, instead of Baxter, and that the fact that she bore the name of Jones when she had children by George Baxter strengthens the conclusions that, whatever may

have been her relations with him, she was not his wife, and the fact that all this time George was cohabiting and living regularly with and in the same house with Dolly, who was commonly regarded his wife, stamped his relationship with Bettie as altogether one of concubinage. But there is a claim made on behalf of the plaintiffs that Betty Jones was married to George Baxter some time after the war, and I have carefully considered the testimony bearing on this contention.

One of the witnesses, M. J. Frederick, who is the son of the plaintiff, Henrietta Frederick, was offered to prove, among other things, the contents of a certificate he says he obtained from Rev. S. B. Sawyer concerning such a marriage, it being stated that the said certificate was lost. This testimony was objected to at the time, but it was taken subject to the objection, and I then had doubts as to its admissibility and am now satisfied that it should not be received. In the first place, it was not shown that the minister who furnished the certificate was not living. If still alive he could have been examined as to the fact of the marriage, or another certificate, if admissible, could have been procured. If dead, the record of the marriage, if he was required to keep a record of the same, could have been obtained. If not bound to keep a record of same, his certificate, whether he was alive or dead, would have been merely the statement of a private person and would be rejected. 1 Green on Ev., § 498. And, even if the certificate was such a one as was admissible, the identity of the parties named in the same would have to be established. Three other witnesses touch upon this alleged marriage in their testimony. One of them, Edith Bell, says she was the sister of Bettie Jones, and that in slavery time she heard George ask the master and missus for her and they gave her to him, and she also states that he afterwards lived with Bettie, which is not in accord with the facts, as have been found above;

and this witness also stated in the first part of her testimony that she did not know about the marriage of Bettie, and later on in her testimony remembered that it did take place on the Rutland place, where Bettie was living, but she does not mention who performed the ceremony or any of the circumstances attending the marriage. Another witness, Amelia Woodward, testified that she was present at the marriage of George Baxter and Bettie Jones by Rev. S. B. Sawyer at his place the second year after emancipation, but that she did not know either of the parties to this marriage, and never saw them any time afterwards, which she qualified afterwards by a statement that she saw George Baxter afterwards coming by home going to Orangeburg. Eliza Johnson also testified on the subject of the marriage of George Baxter and Bettie Jones by Rev. S. B. Sawyer at his place about the second year after freedom, but she was a "don't know" witness, which impresses one on the reading of her testimony of nearly four pages. The testimony on this subject, it will be observed, is very weak. Bettie's sister, Edith Bell, speaks of it as on the Rutland place, and the other witnesses say it was on the place of the officiating minister, Mr. Sawyer. As it is claimed that the marriage is two years after freedom, it appears to me that it can make no difference whether it was had or not. Should it be regarded as important, all the testimony is before the Court. It has already been referred to that George Baxter died about the year 1914 and he left a widow also named Bettie, who married him after the death of Dolly, and is still living.

In February, 1915, an action was commenced in this Court by one A. C. Fulmer against Bettie Baxter and Frank Baxter as the heirs at law and distributees of George Baxter, deceased, for the foreclosure of a mortgage of real estate alleged to have been executed by the said George Baxter in his lifetime, and which was then held by the said

A. C. Fulmer, the said mortgage being a lien upon the said
real estate mentioned and described in the complaint in
this action, and such proceedings were had in the said cause
as resulted in a judgment of this Court, which is dated
August 23, 1915, whereby a sale was ordered and adjudged
of the said mortgaged premises, the sale to be made by the
Judge of Probate of this county as Special Referee upon
the terms set forth in the said judgment order, and the pro-
ceeds of said sale were to be applied to the payment of
the costs and expenses of said action and then to the pay-
ment of the plaintiff's mortgage debt.   The said judgment
order was thereafter modified upon the application of D.
O. Herbert, and he was made a party defendant, and pro-
vision was made for the payment to him of a mortgage
held by him upon the said property from the proceeds of
the sale thereof, and the balance of the proceeds after the
payments of all costs and the expenses and the mortgage
debts of the said A. C. Fulmer and D. O. Herbert was
directed to be held subject to the further order of the Court.
Under the said judgment order as so modified, a sale was
held as directed therein, and at such sale the mortgaged
real estate, being the same property involved in this action,
was sold to the defendant, W. C. Culler, who complied
and under further order of the Court the surplus proceeds
of said sale were applied to the payment of the costs and
expenses of said action, and then to the payment of the
mortgage debts of Fulmer and Herbert above mentioned,
and under further order of the Court the surplus proceeds
after such payment were paid to the said Bettie Baxter
and Frank Baxter, one-third of the same to Bettie Baxter
and two-thirds to Frank Baxter; they being regarded the
heirs at law and the distributees of the before-mentioned
George Baxter, deceased.

Having ascertained from the testimony what, in my judg-
ment, are the facts of the case, it remains to indicate the

conclusions which should follow, and these will be briefly stated.

The defendant being in possession of the real estate, the subject of the action, under a claim of title, makes it incumbent upon the plaintiffs to establish their title to the interest claimed by them in the property. This they have attempted to do, basing their claim upon the contention that they are the lawful children and grand-children of said George Baxter, and, together with his surviving widow, the heirs at law and distributees of his estate. The question, therefore, is have they made good their contention. The case is one of the relics of slavery as it existed in this State over a half century ago, and the testimony in its sweep therefore goes back to the period of the war of the 60's and before that time.

The emancipation of slaves which followed in the wake of that war made it necessary to adjust the social order prevailing among this people, and the Legislature of the State, looking to that end, promptly enacted into law the Act of December 21, 1865 (13 St. at Large, p. 291), by which the relations of husband and wife among persons of color was established, and those then living as such were declared to be husband and wife, and every colored child thereafter born was declared to be the legitimate child of his mother and also of his father, if he had been acknowledged by such father.

This Act and other kindred laws on the same subject naturally found their way into the Courts for construction, and a line of decisions, beginning in 1877 with *Davenport v. Caldwell,* 10 S. C. 317, and coming down to *Mims v. Jones,* 107 S. C. 87, 91 S. E. 987, decided in 1916, has, it seems, pretty well settled the law of this State on the subject. A review of these cases would be interesting, but it is unnecessary for the purposes of this case. Sufficient to say that they enforced the provisions of the Enabling Act of December, 1865, and uniformly hold that, where slaves en-

tered the relation of husband and wife before emancipation, and continued to occupy such relations at the time of the passage of the Enabling Act of December, 1865, these relations became effective as constituting a lawful marriage, and their children were entitled to inherit as though born in lawful wedlock. Applying this rule to the case at bar, the preponderating weight of the testimony as it is clearly set forth in the foregoing statement of facts, is against the contention of the plaintiffs, and they must fail in their action. They are the issue of concubinistic relations of George Baxter and Bettie Jones, who was not known or recognized as his wife. On the other hand, it appears that George Baxter in slavery time was married in form to Dolly, a slave of the same master, and lived with her as his wife on their master's place until emancipation and afterwards until she died, and was living with her at the time of the Act of December, 1865, and there was born to them, so living together as man and wife, a son, Frank Baxter, who lived with his parents, recognized by them as their son, until after the war, and is still living. The suggestion that is made that George Baxter was duly married to Bettie Jones fixed the time of such alleged marriage after the passage of the Enabling Act of December, 1865. If they had, under the circumstances of this case, it would have been void. *Mims v. Jones,* supra. It is unnecessary to consider the effect of the judgment and sale under which the defendant, W. C. Culler, purchased the real estate involved, as the main question in the case is determined against the plaintiffs, and is decisive of the case, and their complaint should be dismissed with costs. I submit herewith the minutes of the references held, together with the testimony taken.

*Messrs. M. J. Frederick and Jacob Moorer,* for appellants, cite: *Child of Dolly not entitled to inherit*: 93 S. C., 427. *Common law marriage of George and Bettie consented in by Master and followed by cohabitation, is lawful*: 26 Cyc., 837. *Marriage after 1865 with the first common law*

*wife was valid*: 26 Cyc., 877. *Issue of bigamous marriage is spurious*: Rich. Eq., 121; 40 Fed., 457; 10 S. C., 317; 33 S. C., 66; 11 S. C., 699.

*Messrs. Wolfe & Berry,* for respondent, cite: *Issue of title in partition is law case*: Code Proc. 1912, Sec. 312; 36 S. C., 560. *Waiver of jury trial*: Code Proc. 1912, Sec. 326; 58 S. C., 448. *Issue of fact in law case, decided by Master and affirmed by Circuit Judge, there can be no appeal*: 90 S. C., 278; 96 S. C., 106.

December 10, 1921.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons stated by A. C. Dibble, Esq., Master, and confirmed by his Honor, Judge Bowman, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.